## PARTICIPATION OF TRIAL JUDGE IN THE TRIAL.

Circuit Court of Summit County.

THE AMERICAN CEREAL COMPANY v. JOHN BOLTZ.

Decided, April 20, 1907.

*Negligence—Evidence of Prior Accidents Admissible—Misconduct of Court.*

1. In an action for personal injuries, evidence of a prior accident of similar character is admissible for the purpose of showing a dangerous condition, even though plaintiff relies upon notice and a promise to repair.

2. It is a matter of taste how much a judge shall talk or ask questions from the bench, but it is not misconduct for him to do so, unless he asks questions which call for evidence that is inadmissible, and objections are made and exceptions are saved.

*Kohler, Kohler & Mottinger,* for plaintiff in error.
*G. M. Anderson,* contra.

HENRY, J.; WINCH, J., and GIFFEN, J. (sitting in place of Marvin, J.), concur.

In this case John Boltz, an employee of the American Cereal Company, recovered a verdict and judgment for $3,000 for personal injuries sustained by him September 2, 1902, while in the employ of said company. The company prosecutes error to reverse that judgment, and alleges a number of grounds for such reversal.

The first ground alleged is on the weight of the evidence, and in order to reach an intelligent understanding of the state of proof in that behalf, it will be necessary to state very briefly how the accident happened.

It appears that Boltz was a young man whose business it was to see to the checking off of the goods that were loaded by the plaintiff in error in cars for shipment, those goods consisting of bags or sacks, boxes or barrels, as the case might be, of various sorts of cereals in different conditions of manufacture for

consumption.  At the place where the injury occurred, a car was drawn up alongside of the company's building, and within a few inches of the building, and from an upper floor, sacks of some sort of ground cereal were being conveyed of their own weight by gravity down an inclined chute with an open top into the car, or to some point near enough to the car so that the sacks could be taken into the car and packed for shipment. Boltz, while standing in the doorway to which this chute came, was leaning outside the door in an effort to see the number of the car, which he could not see if he stood within the car because he could not get his head out properly, and, of course, he could only see at an angle from the doorway where he stood, and it was necessary for him to put his head out.  The chute was, therefore, right alongside of him.  While he was thus standing a sack weighing about one hundred pounds came down the chute to a certain place on the side of the chute from which it is claimed certain boards were missing, which would have carried the sides up farther and prevented an accident of this sort, according to the claim made in the petition below, and striking a projection at that point—an iron rod possibly, to which the board had been originally attached—the bag turned end over and struck the young man on the back of the head in such manner that he claims that he  was thereby afflicted with the disease known as epilepsy, which has assumed a very aggravated form, and will become worse in course of time; and as to which, considered as a result of an accident of this sort, he produced abundant expert testimony to show that it, in fact, was a result of this accident, or might well have been.

He says that he knew about the condition of this chute, and that a few days before the accident to himself he had reported this condition to two foremen, or a superintendent and a foreman; that he called their attention to the fact that it was in a dangerous condition, and that it had, in fact, caused another similar accident to a boy who had been standing alongside of the chute as Boltz stood alongside of it, and that unless they repaired the chute somebody would be seriously hurt or killed. There were other witnesses to this conversation who testified

at the trial.   Some of them testified to parts of the conversation, others to all of it, and there were variations in the testimony. One of the witnesses says that the reply given by the foreman was "You go back to your work and we will attend to ours." On cross-examination he suggests that either that was the answer or that "we will attend to this."   Boltz himself is quite clear, and to some extent he is borne out by other witnesses in stating, that the foreman distinctly said in response to that complaint made at the time of the happening of this former accident at this same place, that the defect in question of which Boltz complained would be repaired.   Now, the foremen, both of them, to whom this statement and promise are alleged to have been made, stoutly deny that any such occurrence transpired.   They say no such accident was reported to them, no such complaint made by Boltz, and no such promise was made by them.   It should be said in addition at this point, that Boltz's claim of complaint that he made, or the promise he received, was a little more comprehensive than I have thus far indicated.   He claims in his petition at least, that a part of the defect, a concurrent defect of which he complained, was a lack of railing at the opening of the top of the chute, whereby packages or boxes or bags would be apt to fall off through the opening into the chute and in such manner as to jump and possibly jump out of the chute; but that feature of the claim made by the petition was entirely eliminated by a specific instruction given to the jury by the trial judge, that they should no longer regard that that was any part of the case, there being no evidence upon that point.

Now as to the existence of the defect, which also I may say, was denied, and the making of this complaint, and the making of this promise to the defendant in error, it suffices to say that there is enough evidence in support of the claim made by the plaintiff below, defendant in error here, to make it a question for the jury, and to make it impossible for us, governed by the principles which must govern us in weighing evidence, and giving to the verdict of the jury the benefit of the presumption which attaches to it, in this state of the testimony, to heed the

claim that this verdict is against the weight of the evidence, and I dismiss that subject without further discussion.

Another claim of error made is that certain testimony relative to the prior accident, to which I have referred, and of another similar occurrence, which consisted of some bag or sack flying out of the chute and striking off the foreman's hat, on one occasion a few days before the accident to the defendant in error, was incompetent and prejudicial—particularly the testimony as to the former accident to the boy, which was somewhat harrowing in its details. It is said it bore upon no issue which the jury were called upon to determine, and because of its manifest tendency to prejudice the plaintiff in error, the defendant below, it ought not to have been admitted in evidence.

The rule in *Brewing Co.* v. *Bauer,* 50 O. S., 560, is, in substance, to this effect: That evidence of prior similar accidents is admissible for two purposes, and two purposes only. One of those purposes is to bring home to the employer, or to the person accused of negligence, notice of the thing, the danger or the defect which it is claimed caused the accident in the case which is being tried; and the other object of such evidence is to establish the fact that the contrivance or machine in question was in fact dangerous. But it is distinctly said in the syllabus of that case, that such evidence is not admissible for the purpose of showing negligence upon the part of the defendant, because it may well be true that, though the danger existed and though the defendant knew of it, there were circumstances which would render any accident resulting therefrom of a non-negligent and non-actionable character, and inasmuch as it is impossible to try out the question of negligence in former cases, evidence of prior similar accidents should be strictly restricted to the proof of those two items of plaintiff's claim, the danger of the contrivance and notice of its dangerous character brought home to the employer. Now, it is said that in this case, inasmuch as reliance is placed wholly upon a promise to repair and of express complaint made by the employee to the employer, it is unnecessary and improper to prove any other notice brought home to the employer than such express notice, since if the express promise

made by him to repair is not made out, the plaintiff below could not recover under any circumstances; for admittedly he knew of the defects of which he complained, and, within the rule of the Norman case, 49 O. S., 598, he could not recover unless upon complaint made and promise to repair obtained. So that evidence of prior accidents for the purpose of showing notice was not only superfluous, but unless it served some useful purpose or necessary purpose in the case, it was prejudicial error to admit it. But that argument overlooks the fact that it was admissible for the other and further purpose of proving the existence of the defect and danger complained of, and it might well be true that with such evidence excluded, and with only such evidence as the plaintiff might adduce, the jury would not believe that the danger or defect in question in fact existed, it being strenuously denied by the defendant. More than that, the admission of this evidence may be and it was, in argument, justified upon the ground, so far as the boy's accident was concerned, upon the prior accident to the boy, that it was necessary to show that fact as an incident to or a circumstance of the complaint that was made by Boltz to his employer, the foreman, because his complaint involved the recital to the foreman of the fact that such an accident had occurred, and that it was only for the purpose of showing it in this way as a part of the express notice that was actually given by Boltz. Now, as a matter of fact, every time evidence of this character was introduced, the court did, in fact, specifically restrict it by a special charge to the jury made then and there, to its operation and effect by way of notice to the employer of the dangers or defects complained of, restricting it unnecessarily, and more than it is restricted by the case of *The Brewing Co.* v. *Bauer, supra.*

We think upon consideration of all of the instances in which such evidence was admitted, all the instances that have been cited to us by either side, that there is not a single one (aside from that incident, which I shall presently speak of), in which a recital of the prior accident to the boy was unnecessarily or improperly brought into the case, and to the attention of the jury; or that in a single instance it failed to be serviceable for the

purpose that the court said it should be confined to in these special charges I have referred to, and also in his general charge to the jury, namely, the purpose of enabling Boltz to prove that he had, in fact, given express notice to his employer.

Now the hat incident was of a different character; for that was not part of the notice—the express notice given by Boltz, and the testimony thereof is of an independent similar accident. We think, however, that it was not of such a harrowing character as to have a prejudicial effect upon the jury. The fact that a man's hat was knocked off could not certainly have prejudiced the jury against this defendant. It was admissible for the purpose of showing that the defendant had notice, except for the limitations upon the issue of the notice in this case, as I have already described, and also for the purpose of proving the defect. We think no prejudice resulted from the error of the court in admitting evidence of this hat incident, if it was error.

There were several requests to charge made by the plaintiff in error before argument, and made in writing and requested to be given before argument, and some of them were given. A number of them were not. We have carefully examined all those that were refused, and if any that were correct were refused, even though they might be substantially covered by others that were given, still there would be error and prejudicial error under the statute in refusing them. Several of them state the law correctly, but they fail to state the law in accordance with the rules of law, applicable to this case, predicated upon the theory of a complaint and promise to repair, upon which alone the plaintiff could recover, but left that question entirely out of the account, and for that reason they were inapplicable to this case, and ought not to have been given. The eighth was right and should have been given, except for the fact that the word "facts" was used instead of "evidence."

We have examined the charge of the court and we find no error in the charge.

It is complained, however, that the trial judge was guilty of substantial misconduct in participating to an undue and un-

warranted extent in the trial of the case; that is to say, in the interrogation of witnesses before the jury. Certain it is that he did ask a great many questions which are of record, and we have referred to and examined every one of those instances called to our attention by counsel. I won't say we have examined every one of them, but we went two-thirds through a long list of instances, and it was not claimed that any of the instances urged by counsel differed from any other, but that it was the general habit of the court that was complained of, to participate in the trial of the case unduly. We did not find a single instance in which we thought the court was guilty of misconduct in that behalf. It may be a matter of difference of opinion, a matter of taste as to how much a judge should talk or ask questions from the bench, but it certainly is not misconduct for him to do so, unless he asks questions which call for evidence that is inadmissible, and objections are made and exceptions saved; and we find no error in that behalf, and no error in the record, and the judgment is affirmed.